IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER J. VIOLA, Founder of the Anti Roman Catholic Defamation League (ARCDL), | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-1788 |
| A&E TELEVISION NETWORKS, a corporation, MICHAEL S. DELL, Chairman of the Board for A&E Television Networks, individually, and KEVIN B. ROLLINS, President, CEO and Director for A&E Television Networks, Individually, | ) ) ) ) ) ) ) ) | Judge McVerry Magistrate Judge Hay |
| Defendants. | ) | |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the motion to dismiss submitted on behalf of defendants (Docket No. 3) be granted.

II.  REPORT

Plaintiff, Walter J. Viola ("Viola"), commenced this action alleging that defendants violated the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 223, the Child Online Protection Act ("COPA"), 47 U.S.C. § 231, and the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-68, et seq., and defamed the Roman Catholic Church and the Roman Catholic faithful when A&E Television Networks ("A&E")

aired a program in December of 2005 entitled "Beyond the Da Vinci Code" (the "Program") on The History Channel. The Program explored the theories set forth in Dan Brown's best selling and controversial novel, The DaVinci Code, which suggests that Jesus Christ and Mary Magdalene were married and had children creating a lineage that the Church has sought to conceal in an effort to protect its own authority. Plaintiff complains that without any disclaimer the Program's "what if" historical scenario was an attempt to say that everything that Roman Catholics believe is nonsense and that the showing of "obscene" scenes of Jesus in a compromising position with Mary Magdalene was done with total disregard for the damage it would do to minors of the Roman Catholic faith.[1] Plaintiff further alleges that the Program "began to move away from 'what if' " and began to present its revisionist theory as fact in an effort to defame the Roman Catholic Church and intentionally mislead viewers under the guise of free speech and free press.[2] In addition to television and cable media devices, plaintiff complains that defendants also used the internet to expose their fraud and deception to those who would not normally watch their programs or who are censored by parental guidance.[3]

Plaintiff, who claims he is the founder of the Anti Roman Catholic Defamation League, filed the instant complaint on December 29, 2005, bringing claims against A&E, the alleged Chairman of the Board for A&E, and the alleged President, CEO and Director for A&E, for defamation (Count I), and violations of the Decency Act (Count II), the Communications Act

---

[1] Complaint ¶¶ 5, 20, 21, 22.

[2] Complaint ¶¶ 22-24.

[3] Complaint ¶ 26.

(Count III) and RICO (Count IV).[4]  Defendants have now filed a motion to dismiss in which they argue that all of plaintiff's claims should be dismissed as he has failed to state a claim as a matter of law.

In reviewing a motion to dismiss under Rule 12(b)(6), all well pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant.  Brader v. Allegheny General Hospital, 64 F.3d 869, 873 (3d Cir. 1995); Scrob v. Patterson, 948 F.2d 1402, 1405 (3d Cir. 1991).  The Court is not, however, required to accept as true unsupported conclusions and unwarranted inferences.  Schuylkill Energy Resources v. PP&L, 113 F.3d 405, 417 (3d Cir. 1997).  Thus, "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the motion to dismiss is properly granted.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The issue is not whether the plaintiff will prevail in the end but only whether he should be entitled to offer evidence in support of his claim.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

Defendants first argue that plaintiff's claim for defamation should be dismissed as plaintiff has not alleged that he has been personally defamed and that he has no standing to bring

---

[4] Although plaintiff has named Michael S. Dell and Kevin B. Rollins in the complaint as holding the relevant offices at A&E, defendants have represented that neither Messrs. Dell or Rollins has any relationship to A&E and both have been improperly named. Plaintiff has conceded the error and, in response, has merely changed the caption of the case to reflect the names of the parties who do hold these positions. Notwithstanding the impropriety of plaintiff's correction, given that defendants have assumed that plaintiff intended to sue the individuals who actually hold these positions at A&E and have filed the instant motion on their behalf, and given that the Court has recommended that the complaint be dismissed for failure to state a claim against A&E or its officers regardless of their names, there appears to be no need to have plaintiff formally amend the complaint.

suit on behalf of the Roman Catholic Church or the hundreds of millions of the Roman Catholic faithful around the world.

In order to succeed on a defamation claim, a plaintiff must show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. Moore v. Cobb-Nettleton, 889 A.2d 1262, 1267 (Pa. Super. 2005). See 42 Pa.C.S.A. § 8343(a). Moreover, "it is the function of the court to determine whether the communication complained of is capable of a defamatory meaning." Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 704 (1995), appeal denied, 548 Pa. 637, 694 A.2d 622 (1997). See Remick v. Manfredy, 238 F.3d 248, 261 (3d Cir. 2001) ("The trial court must determine as a matter of law whether the communication is capable of defamatory meaning; if not, the claim should be dismissed.") To determine whether a publication is defamatory, the court must consider if the communication tends to harm the complaining party's reputation "so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." MacElree v. Philadelphia Newspapers, Inc., 544 Pa. 117, 124-25, 674 A.2d 1050, 1054 (1996), quoting Birl v. Philadelphia Electric Co., 402 Pa. 297, 303, 167 A.2d 472, 475 (1960).

Instantly, plaintiff has alleged in the complaint only that, "The program aired by [The History Channel] was an attempt by the owners and sponsors of THC to defame the Roman Catholic Faith and the Faithful." Complaint ¶ 45. Plaintiff has not alleged that he has personally been defamed or that his reputation or ability to associate with third persons has been harmed as

4

a result of A&E airing the Program.  Thus, even accepting the allegations in the complaint as true, plaintiff has failed to allege facts which, even if proven, would entitled him to relief.

> Moreover, as found by the Court of Appeals for the Third Circuit:
>
> Individual group members may sue based upon statements about a group when the statements were directed toward a "comparatively small class or group all of whose constituent members may be readily identified and the recipients of the [statements] are likely to identify some, if not all, of them as intended objects of the defamation." *Farrell v. Triangle Publications, Inc.*, 399 Pa. 102, 159 A.2d 734, 736-37 (1960).  But no claim arises from a defamatory remark directed toward a group whose membership is so numerous that no individual member can reasonably be deemed its intended object. *Id.*, 399 Pa. 102, 159 A.2d at 736.  Similarly, no claim exists if, for any other reason, a reader could not reasonably conclude that the statements at issue referred to the particular person or persons alleging defamation. *Id.*, 399 Pa. 102, 159 A.2d at 737.

Alvord-Polk, Inc. v. F. Schumacher & Co., 37 F.3d 996, 1015 (3d Cir. 1994), cert. denied, 514 U.S. 1063 (1995).  Here, it cannot be disputed that membership in the Roman Catholic faith is numerous or that neither plaintiff nor any other individual member can reasonably be deemed the object of the Program's allegedly defamatory message.  Thus, to the extent that plaintiff seeks to bring his claim on behalf of the Roman Catholic faithful, his claim must also fail.  See also Schonek v. WJAC, Inc., 436 Pa. 78, 82-83, 258 A.2d 504, 507 (1969), quoting 22 P.L.E. Libel and Slander § 17 (1959) (In order to be actionable, defamatory words "must refer to some ascertained or ascertainable person, and that person must be the plaintiff.")

Finally, the Court notes that although plaintiff has suggested that because he has been baptized any attack on the Roman Catholic Church is an attack on him, thereby allowing him to represent the Church, he has not provided the Court with any basis to find that he is the

5

legal agent of the Roman Catholic Church so as to entitle him bring the instant action on the Church's behalf.  See Black's Law Dictionary 63 (6th ed. 1990) (Defining "agent" as "a person authorized by another to act for or in place of him ....")  As such, plaintiff's claim for defamation is properly dismissed.

Defendants also argue that plaintiff's claim brought under section 223(a) of the CDA at Count II of the complaint is properly dismissed as the statute does not create a private right of action.[5]  We agree.

It appears beyond dispute that the CDA criminalizes certain activity and imposes criminal penalties, i.e., fines pursuant to Title 18, which is the criminal code, and imprisonment, for violations thereof.  See 47 U.S.C. §§ (a)(1), (2).  See also Ashcroft v. American Civil Liberties Union, 542 U.S. 656, 661 (2004) (Describing the CDA as Congress' first attempt to make the internet safe for minors by criminalizing certain internet speech.); Reno v. ACLU, 521 U.S. § 844, 872 (1997) ("[T]he CDA is a criminal statute."); U.S. v. Dhingra, 371 F.3d 557, 562 (9th Cir. 2004) ("The CDA criminalized speech."); American Civil Liberties Union v. Johnson,194 F.3d 1149, 1157 (10th Cir. 1999) ("[T]he CDA is a 'content-based regulation of speech' which imposes criminal liability.")  As such, the authority to enforce the CDA lies with the proper government authorities and not with a private citizen such as plaintiff.  See Kafele v.

---

[5] Section 223(a) prohibits the knowing transmission of obscene messages by telecommunications devices to any recipient under 18 years of age.  47 U.S.C. § 223(a).  It should also be noted here that although plaintiff suggests in the complaint that defendants have also violated 47 U.S.C. § 233(d), which prohibits anyone from knowingly sending or displaying an obscene communication to anyone under 18 over the internet, defendants have argued that there was no sexual or obscene content on A&E's website or that of The History Channel in connection with the Program.  See Defendants' Motion to Dismiss, pp. 2-3. Plaintiff appears to have conceded as much in his responsive brief having cited only the language of § 223(a), which, by the way, has since been amended.  See Plaintiff's Brief in Response to Defendants' Motion, pp. 9-10.

Frank & Woolridge Co., 108 Fed. Appx. 307, 308-09, 2004 WL 1859348 * 2 (6th Cir. August 17, 2004) ("[Plaintiff] possesses no private right of action against the defendants for alleged violations of ... criminal statutes."); Martinez v. Ensor, 958 F. Supp. 515, 518 (D. Colo. 1997) (Criminal statutes can be enforced only by proper authorities of United States government and not private citizens.); Plant v. Internal Revenue Service, 943 F. Supp. 833, 837 (N.D. Ohio 1996) (Dismissing the plaintiff's criminal claims since as a private citizen he lacks the prosecutorial authority to bring them.); U.S. ex rel. Savage v. Arnold, 403 F. Supp. 172, 174 (E.D. Pa. 1975) ("[T]he essential role of the government (i.e. the U.S. Attorney) in the prosecution of criminal violations must of necessity preclude complaints by private citizens."); O'Neil v. Beck, 2005 WL 2030319 *1 (M.D. Pa. 2005), quoting Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 26 n. 3 (3d Cir. 1989) (Finding that the district court correctly decided that criminal offenses are enforceable by the government rather than by citizen plaintiffs.)

  Notably, plaintiff has not addressed defendants' argument in this regard but merely recites the CDA and reiterates that he is asking the Court to determine its enforceability and what fines and damages are appropriate. See Plaintiff's Brief in Response to Defendants' Motion, pp. 9-10. Whether or not there has been a violation of the CDA, however, does not speak to whether plaintiff is the proper person to seek its enforcement in the first instance. Because it appears that he is not the proper party, and plaintiff has not provided the Court with any authority to the contrary, it appears that plaintiff's claim brought at Count II is properly dismissed as well.

Defendants have also argued that plaintiff's claim brought pursuant to COPA at Count III of the complaint be dismissed for the same reason.[6] Because COPA, like the CDA, criminalizes certain internet speech it appears that defendants' motion in this regard is properly granted as well. See Ashcroft v. American Civil Liberties Union, 542 U.S. at 661 (Describing COPA as Congress' second attempt to make the internet safe for minors by criminalizing certain internet speech and noting that COPA imposes criminal penalties of a $50,000 fine and six months in prison for knowingly posting content that is harmful to minors for commercial purposes); U.S. v. Dhingra, 371 F.3d at 564 n.8 ("COPA ... is narrowly tailored to criminal activity . . . .")

Again, plaintiff has not specifically addressed defendants' argument in this regard but merely categorizes defendants' argument that he has no private right of action as "incorrect" and recites portions of COPA. He then cites to two cases which purportedly support his position that defendants have violated COPA but which revolve around the constitutionality of two other obscenity statutes and do not address whether a private citizen may bring an action to enforce the statute. See Ginsberg v. New York, 390 U.S. 629, rehearing denied, 391 U.S. 971 (1968) (Addressing the constitutionality of a New York state statute); Reno v. American Civil Liberties Union, 521 U.S. 844 (1997) (Addressing the constitutionality of the CDA). Moreover, if anything, Ginsberg v. New York, supra, appears to support defendants' position as the case stems from the appellant's criminal conviction of charges brought by the state of New York and not by a private citizen in a civil proceeding. Thus, plaintiff has not provided the Court with any basis

---

[6] COPA imposes criminal penalties of a $50,000 fine and six months in prison for the knowing posting, for "commercial purposes," of World Wide Web content that is "harmful to minors." 47 U.S.C. § 231(a)(1).

for concluding that a private right of action exists under COPA and plaintiff's claim brought at Count III is properly dismissed.[7]

Finally, plaintiff has brought a RICO claim at Count IV of the complaint which defendants argue is properly dismissed because plaintiff has failed to plead sufficient facts to state a RICO violation. Specifically, defendants argue that plaintiff has failed to allege that defendants engaged in racketeering activity much less a pattern of racketeering activity or that he has suffered an injury as a result of the alleged violation.

In order to prove that defendants' actions violated RICO, "plaintiff must show: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" Warden v. McLelland, 288 F.3d 105, 114 (3d Cir. 2002), quoting Sedima, S.P.R.L v. Imrex Co., 473 U.S. 479, 496 (1985). The statute sets forth a list of criminal activities that constitute "racketeering activity" for purposes of RICO, of which dealing in obscene matter is one and seemingly the only one applicable to this case, and requires the participation in at least two acts of criminal activity to establish a "pattern" of racketeering. See 18 U.S.C. §§ 1961(1), (2). See Warden v. McLelland, supra; Lujan v. Mansmann, 956 F. Supp. 1218, 1230 (1997). Plaintiff must also demonstrate that the racketeering activity caused the plaintiff's injury. Warden v. McLelland,

---

[7] Given our findings here, the Court need not address defendants' alternative argument that plaintiff's COPA claim should be dismissed because the Supreme Court found it unconstitutional in Ashcroft v. American Civil Liberties Union, supra. Nevertheless, the Court notes that review of Ashcroft v. American Civil Liberties Union, demonstrates that the Supreme Court did not hold that the statute was unconstitutional but merely held that the lower courts properly granted the ACLU's request for a preliminary injunction, agreeing that the ACLU would *likely* succeed on the merits of its claim that COPA ran afoul of the First Amendment. Indeed, the Supreme Court then remanded the case for trial to decide that very issue. Ashcroft v. American Civil Liberties Union, 542 U.S. at 659-673.

supra; Seneca Insurance Co. v. Commercial Transportation, Inc., 906 F. Supp. 239, 242 (M.D. Pa. 1995).

Here, whether or not the depiction of Jesus Christ and Mary Magdalene in "compromising positions" during the Program rises to the level of dealing in "obscene" matter as plaintiff has alleged, it nevertheless does not appear that plaintiff has alleged any fact which would suggest that defendants engaged in a pattern of racketeering.[8]  Indeed, plaintiff's allegations revolve solely around the airing of the Program in December of 2005, and appears insufficient to establish a pattern.  See Lujan v. Mansmann, 956 F. Supp. at 1230.  See also H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 236-49 (1989) (In order to establish a pattern there must be continuity and relationship between discrete racketeering activities.)

Further, although plaintiff discusses the internet at length in his complaint, nowhere does he allege that the Program or any allegedly obscene portions of it appeared on a website controlled by defendants.  Moreover, defendants have set forth in the instant motion the extent of their discussions of the Program on The History Channel's website and that operated by A&E, neither of which contains anything obscene.  See Defendants' Motion to Dismiss the Complaint, pp. 2-3.  See also Miller v. California, 413 U.S. 15, 24, rehearing denied, 414 U.S. 881 (1973) ("[W]e now confine the permissible scope of such regulation to works which ... taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value."); Ben Rich Trading, Inc. v. City of Vineland, 126 F.3d 155, 160 (3d Cir. 1997)

---

[8]  Although defendants have submitted a video tape of the Program to support its position that nothing about the Program qualifies as "obscene" as defined under the law, the Court did not view it as it was able to resolve the instant motion without doing so.

("Speech that is sexually explicit but not 'obscene' either in the form of film, text, or live presentation, must be accorded First Amendment protection"). As such, plaintiff has failed to allege facts which would support a cause of action under RICO.

Nor has plaintiff alleged that he has suffered any injury as a result of defendants' alleged racketeering activity. As argued by defendants, the only injury to anyone stemming from the alleged obscenity contained in the Program that can be culled from the complaint is that to minors of the Roman Catholic Faithful who have been exposed to the Program. Plaintiff, however, has not alleged that he is a minor or that he has otherwise been injured by having viewed the Program.

Significantly, plaintiff's only response to defendants' argument on this issue is to deny that his claim is insufficient citing to the fact that he provided the Court with an outline of what is required under RICO. Indeed, it appears that plaintiff has attached to the complaint as Appendix C a copy of an unidentified treatise which discusses the elements of a RICO claim under section 1962(c). Merely reciting what must ultimately be proven to succeed on a RICO claim generally, however, does not suffice to show in what manner the actions of these defendants meet those requirements which plaintiff must do in order to properly state a claim against them. Haines v. Kerner, 404 U.S. at 520-21. Under these circumstances, plaintiff has failed to plead facts which, if proven, would entitle him to relief and the RICO claim brought at Count IV is properly dismissed.

For these reasons, it is recommended that the motion to dismiss submitted on behalf of defendants (Docket No. 3) be granted.

      Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                            Respectfully submitted,

                                            /s/ Amy Reynolds Hay
                                            AMY REYNOLDS HAY
                                            United States Magistrate Judge

Dated:    23 May, 2006.

cc:    Hon. Terrence F. McVerry
       United States District Judge

       Walter J. Viola, Pro Se
       34 Thorncrest Drive
       Pittsburgh, PA 15235

       Dennis J. O'Brien, Esquire
       600 Grant Street
       Suite 660, USX Tower
       Pittsburgh, PA 15219